Judgment rendered May 25, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,521-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

AMANDA LEE SPILLERS                    Plaintiff-Appellee

versus

MICHAEL SENN, SR.                      Defendant-Appellant

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Lincoln, Louisiana
Trial Court No. 61740

Honorable Bruce Edward Hampton, Judge

* * * * *

KITCHENS LAW FIRM                      Counsel for Appellant
By: Perrin Nelson Smith, Jr.


CULPEPPER & CARROLL, PLLC              Counsel for Appellee
By: Teresa Culpepper Carroll

GINA LEIGH JONES

* * * * *

Before PITMAN, STONE, and COX, JJ.


COX, J., concurs in the result.

**STONE, J.**

The plaintiff, Amanda Spillers, is the adult daughter of the defendant, Michael Senn, Sr. On July 22, 2021, she obtained a protective order against him effective until January 22, 2023, pursuant to the Protection from Family Violence Act ("PFVA"), La. R.S. 46:2131, *et seq*. The defendant now appeals. In his sole assignment of error, the defendant asserts that the trial court erred in finding that the evidence proved the facts necessary to authorize the protective order. For the reasons stated herein, we affirm.

## FACTS AND PROCEDURAL HISTORY

The plaintiff is one of ten siblings, three of whom are male and seven of whom are female. The defendant testified that he does not view women as equal to him. Girls in the family were not allowed to wear pants or makeup, and their hairstyles were strictly regulated. Also, the children were homeschooled and not allowed to interact with anyone outside of the family except for people at church and one of their neighbors. Even the defendant's son, Michael Senn, Jr., stated in a Facebook post that the defendant had taught him that women are not his equal. It is undisputed in the trial testimony that the plaintiff's cousin, John Mead, sexually assaulted her and one of her sisters (who was eight years old at the time) in the family home and that the defendant successfully forbade contacting the police in both instances.

The plaintiff, along with her sisters, Annie Wingard and Hannah Colvin, testified at trial. Their testimony revealed that the defendant disciplined them by whipping until they were 13 or 14 years of age. Annie testified that the defendant would make her pull up her skirt to receive lashes with a belt. Hanna reported that the defendant required her to strip from the

waist down when he spanked her. The plaintiff testified that the defendant whipped her when she was 14 years old because, while washing the dishes, she clanked them together too loudly. She recounted that she was standing on a stool so she could reach the sink when, without warning, the defendant came up behind her and knocked her off the stool, initiating the whipping. She reported that she suffered bruises all over her body from the fall and the ensuing whipping.

Hannah testified that she remembered seeing her father, in the middle of the night, standing over the baby crib with his penis exposed when she got up to go to the bathroom. She said the baby was up against the edge of the crib and the defendant's penis was very close to the baby's face. Hannah reported that she was between four and six years old at the time and, shortly thereafter, developed a bed-wetting problem because she was afraid to get up and go to the bathroom.

The plaintiff testified that she remembered an occasion where her father aggressively kissed her and tried to stick his tongue in her mouth. She also testified that, after going to bed fully clothed, she awakened nude with a man standing over her. Initially, she said she could not clearly remember his face, but later—after a leading question from her lawyer—she claimed that she indeed remembered identifying the man as her father by seeing his face.

In 2006, when she was 22 years old, plaintiff moved out of her parents' home. She has been married for over a decade and has children of her own. Plaintiff has had minimal contact with her parents until 2019, when she ceased all contact with them. She testified that the reason she maintained contact was that she had younger siblings still living in the defendant's home

2

and she was concerned for them. Also, around that time, she began receiving counseling for sexual abuse.

The following events in 2021 led to the plaintiff filing the petition for protective order:

- June 20, 2021: Michael Senn, Jr., posted a Father's Day tribute to his father on Facebook. Caroline Colvin, Hannah's wife, posted a retort accusing the defendant of physically, sexually, and mentally abusing his daughters.

- June 23, 2021: Michael Senn, Jr., went uninvited to the plaintiff's house with gifts for the plaintiff's children, and banged on the door. The plaintiff refused to answer the door and did not speak to him; she called her husband to come home.

- June 27, 2021: Michael Senn, Jr., and Bonnie Senn went to the plaintiff's house uninvited and sat in the car parked in front of her house for three hours.

- June 29, 2021: the defendant sent a text message to the plaintiff's father in law, Drew Spillers, and also called his phone and left a voicemail requesting that Drew contact him.

- July 2, 2021: the plaintiff filed the petition for protective order and the court signed a temporary restraining order ("TRO").

- July 9, 2021: the day the TRO was served on the defendant, the defendant sent another text message to Drew Spillers, stating:

  Mr. Drew, not sure if you are aware of all that's going on in my family, all of the statements made but Bonnie and I are working to get to the bottom of this and get to the truth. We need to talk with Amanda and Daniel but they won't respond. I would like to talk with you and get your counsel. Mike Senn.

The Petition for Protective Order (the "petition") alleges that: (1) the defendant sexually abused the plaintiff when she was a child living in his household; these events occurred 15 years before the filing of the petition; (2) when the plaintiff became an adult, she moved out of the defendant's home, got married, and intentionally became estranged from her parents; and (3) Caroline Colvin, the plaintiff's sister's wife, made allegations on

3

Facebook that the defendant had sexually abused his daughters during their childhood; and, (4) thereupon, the defendant sought to make contact with the plaintiff indirectly, through her mother and Michael Spillers, Jr., the plaintiff's brother.

The parties hotly dispute whether the evidence preponderated in favor of the plaintiff's allegations essential to the granting of the protective order. The plaintiff's theory is that the defendant committed the crime of "stalking" in attempting to contact her through Michael Senn, Jr. and the defendant's wife/the plaintiff's mother. She asserts that, because her father had sexually abused her 15 years in the past, she reasonably suffered emotional distress and alarm as a result of these efforts to contact her. The trial court, in its oral reasons for judgment, found that the plaintiff had carried her burden of proving: (1) that she was abused in the past; (2) that Michael Senn, Jr., and Bonnie Senn, in their attempts to contact the plaintiff, were acting at the direction of the defendant; and (3) that the plaintiff has reason to fear the defendant.

The defendant further argues that the grant of the protective order was erroneous in part because the plaintiff failed to show she was in *immediate* need of protection and failed to show that any *current* physical or sexual abuse occurred.

### DISCUSSION

A court "may grant any protective order…to bring about a cessation of domestic abuse…*or the threat or danger thereof.*" La. R.S. 46:2136(A). For purposes of the PFVA, La. R.S. 46:2132 defines domestic abuse as including "any offense against the person, physical or nonphysical, as

4

defined in the Criminal Code of Louisiana." Pursuant to La. R.S. 14:40.2,

stalking is an offense against the person defined as follows:

> A. Stalking is the intentional and repeated…harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress
> …
> C. For the purposes of this Section, the following words shall have the following meanings:
> (1) "Harassing" means the repeated pattern of verbal communications or nonverbal behavior without invitation which includes but is not limited to making telephone calls, transmitting electronic mail, *sending messages via a third party*, or sending letters or pictures.
> (2) "Pattern of conduct" means a series of acts over a period of time, however short, evidencing an intent to inflict a continuity of emotional distress upon the person. Constitutionally protected activity is not included within the meaning of pattern of conduct. (Emphasis added).

A trial court's decision regarding a protective order issued pursuant to

the PFVA is subject to abuse of discretion review. *Larremore v. Larremore*,

52,879 (La. App. 2 Cir. 9/25/19), 280 So. 3d 1282. Therein we stated:

> In the area of domestic relations, much discretion is vested in the trial judge, particularly in evaluating the weight of evidence which is to be resolved primarily on the basis of credibility of witnesses. When findings of fact are based upon a decision regarding credibility of witnesses, respect should be given to those conclusions, for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on understanding and believing what is said.

A party seeking a protective order under the PFVA must establish the

necessary facts by a preponderance of the evidence. *Green v. Myers*, 54,200

(La. App. 2 Cir. 3/9/22), 335 So. 3d 514, *reh'g denied* (4/5/22).

Thus, in effect, the plaintiff was required to prove by a preponderance

of the evidence that the defendant had been stalking her. The trial court was

within its discretion in finding that the plaintiff met her burden of proof. The

evidence included a message that the defendant himself sent directly to the

plaintiff. He also attempted to directly contact her father-in-law several times regarding the plaintiff; this consisted of two text messages and a phone call with a voicemail. Given the defendant's substantial degree of control over his family, the trial court did not abuse its discretion in finding that Bonnie Senn (plaintiff's mother/defendant's wife) and Michael Senn, Jr. (plaintiff's brother/defendant's son), in attempting to contact the plaintiff, were acting at the defendant's behest. These attempts included going to the plaintiff's house uninvited while she was home and staying in the car parked in front of her house for three hours.

Under ordinary circumstances, it is arguably possible that these actions alone may not cause a reasonable person to be alarmed or suffer emotional distress. However, the family history to which the plaintiff and two of her sisters attested during trial included various allegations of physical and sexual abuse. These testimonies, viewed collectively, strongly support a finding that the defendant's aforementioned attempts to contact the plaintiff would cause a reasonable person in the plaintiff's situation to feel grievous alarm and suffer emotional distress.

## CONCLUSION

The trial court's grant of the protective order is **AFFIRMED.** All costs of this appeal are taxed to the defendant.